**\*NOT FOR PUBLICATION\***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MEDICAL TRANSCRIPTION BILLING, CORP., <br><br> Plaintiff, <br><br> v. <br><br> QHR TECHNOLOGIES INC., <br><br> Defendant. | Civ. No. 16-8611(FLW) <br><br> **OPINION** |

**WOLFSON, U.S.D.J.**:

In this contract dispute, defendant QHR Technologies ("Defendant") pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6), has moved to dismiss (ECF No. 4) the Complaint. Plaintiff Medical Transcription Billing ("Plaintiff") opposes. (ECF No. 6). The Court issues the following opinion based upon the written submissions and without oral argument pursuant to Fed. R. Civ. P. 78(b). For the reasons stated herein, Defendant's motion to dismiss is **DENIED** without prejudice.

BACKGROUND

Defendant, a Canadian company incorporated in British Columbia, is a healthcare technology company, and Softcare Solutions, Inc. ("Softcare"), a U.S. subsidiary of Defendant, is located in Nevada. (*Compl.,* 1, 2).[1] Plaintiff is a healthcare IT company which provides medical billing and practice management services to healthcare providers, and it resides in New Jersey. (*Id.* at 2). In June 2015, Defendant approached Plaintiff with

---

[1] The facts recounted in this section of the Opinion are derived from the allegations of the Complaint, and taken as true.

1

an opportunity to purchase assets of its subsidiary, Softcare. (*Id.*). Importantly, while the parties to the purchase contract were Plaintiff and Softcare, Defendant, nevertheless, participated in all negotiations of the purchase. (*Id.*). Part of the purchase included rights to provide services to Moore Eye Care, P.C. ("Moore Eye"). (*Id.*). Defendant represented to Plaintiff that Moore Eye was indebted to Softcare for $338,177.36 and Plaintiff would be able to collect those accounts receivable. (*Id.* at 2–3). Michael Dingle, Senior Vice President of Defendant, was involved in the discussions throughout the month of June, and represented that Defendant had employees working the Moore Eye account full-time, including the accounts receivable, and the only reason payment had been delayed was because of bad action by Dr. Ginsburg, the founder and sole shareholder of Moore Eye. (*Id.* at 3).

On July 10, 2015, Plaintiff and Softcare entered into an Asset Purchase Agreement ("APA") and an Assignment and Assumption Agreement, both of which were signed on Softcare's behalf by Defendant's Vice President and Chief Financial Officer, Jerry Diener. (*Id.* at 4). Under the Assignment and Assumption Agreement, Plaintiff assumed the Contract between Softcare and Moore Eye on Softcare's behalf, and Softcare c/o Defendant assigned to Plaintiff all sums due and owing to Softcare by Moore Eye. (*Id.*). Pursuant to the Asset Purchase Agreement, Softcare c/o Defendant assigned to Plaintiff the Moore Eye accounts receivable due to Softcare from Moore Eye. (*Id.*). Softcare c/o Defendant warranted that the accounts receiveable were a valid obligation that Plaintiff could enforce. (*Id.*) Furthermore, Softcare c/o Defendant warranted that no current client had indicated in the past twelve months that Softcare was in breach of any contract with the clients. (*Id.* at 5).

2

On or about August 5, 2015, Plaintiff sent Moore Eye an invoice for services rendered and for the outstanding Accounts Receivable balance. (*Id.*). Moore Eye responded that Moore Eye and Defendant had agreed that no payments would be made on that account due to continuing issues for which Plaintiff was now liable, and, therefore, Moore Eye refused to pay the requested amount. (*Id.*). Plaintiff then suspended its service to Moore Eye, and Moore Eye sued Plaintiff, Softcare, and Defendant in the Eastern District of Pennsylvania for breach of contract. (*Id.* at 6). Defendant settled with Moore Eye and is no longer a party in that case. (*Id.*).

Plaintiff filed this four-count Complaint against Defendant on November 11, 2016. (ECF No. 1). Count I alleges fraud by Defendant based upon misrepresentations made to Plaintiff to induce Plaintiff to enter into the purchase contract. Defendant allegedly represented that Defendant's relationship with Moore Eye was "strong and free of controversy," that Moore Eye was satisfied with Softcare's services, that Moore Eye's accounts receivable were valid and collectable, that Plaintiff could collect with limited effort, and that Softcare had not breached its contract with Moore Eye. Count II seeks indemnification for Plaintiff's liability to Moore Eye, based on the contract between Softcare and Plaintiff. Count III seeks indemnification for liability to Moore Eye, on no specified basis. Count IV alleges breach of the implied covenant of good faith and fair dealing based on New Jersey common law.

Defendant filed the present motion to dismiss for failure to state a claim (Fed. R. Civ. P. 12(b)(6)) and for failure to state allegations of fraud with sufficient particularity (Fed. R. Civ. P. 9(b)).

**LEGAL STANDARD**

A motion under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The defendant bears the burden of showing that no claim has been presented. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). When considering a Rule 12(b)(6) motion, a district court should conduct a three-part analysis. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id*. (quoting *Ashcroft v. Iqbal*, 56 U.S. 662, 675 (2009)). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). The court may disregard any conclusory legal allegations. *Id*. Finally, the court must determine whether the "facts are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Id*. at 211 (quoting *Iqbal*, 556 U.S. at 679). Such a claim requires more than mere allegation of an entitlement to relief or demonstration of the "mere possibility of misconduct;" instead, the facts must allow a court to reasonably infer "that the defendant is liable for the misconduct alleged." *Id*. at 210, 211 (quoting *Iqbal*, 556 U.S. at 678-79).

**ANALYSIS**

Defendant argues first that it was not a party to the APA, and that Plaintiff has not alleged facts to support piercing the corporate veil between Defendant and Softcare; therefore, Defendant submits that Counts II and IV, which are based on the APA contract, must be dismissed. (ECF No. 4-1).

Indeed, in order to state a claim for contract indemnification or breach of the implied covenant of good faith and fair dealing, there must be an underlying contract to

4

which Defendant was a party. In this case, the contract is explicitly between Softcare and Plaintiff. However, Plaintiff alleges that Defendant acted entirely on Softcare's behalf and asserted power over Softcare's employees and assets. Plaintiff, therefore, argues that Defendant — in addition to Softcare — is liable under the contractual theories asserted in the Complaint. The Court turns then to the question of whether Softcare's corporate veil may be pierced to reach Defendant.

Defendant argues that British Columbia law applies to the veil piercing analysis. In diversity cases, federal courts must apply the forum state's choice-of-law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *N. Am. Steel Connection, Inc. v. Watson Metal Prod. Corp.*, 515 F. App'x 176, 180 (3d Cir. 2013). In New Jersey, "effect [is given] to contracting parties' private choice of law clauses unless they conflict with New Jersey public policy." *General Motors Corp. v. New A.C. Chevrolet, Inc.*, 263 F.3d 296, 331 n.21 (3d Cir. 2001) (citing *Instructional Sys., Inc. v. Computer Curriculum Corp.*, 614 A.2d 124, 133 (N.J. 1992)). Here, the APA contains a choice of law provision, which provides that "the Laws of the Province of British Columbia and the federal laws of Canada" govern the agreement. Notwithstanding such a clause, however, where the choice of law clause states that it governs "[t]his Agreement," "the clause at issue simply does not extend to alter ego liability" because only the agreement itself is governed by the choice of law provision. *Las Vegas Sands Corp. v. Ace Gaming, LLC*, 713 F. Supp. 2d 427, 443 (D.N.J. 2010). Furthermore, "[t]he apparent weight of authority agrees that veil piercing analysis is governed by the law of the state of formation." *Preferred Real Estate Investments, LLC v. Lucent Techs., Inc.*, 2009 WL 1748954, at *3 (D.N.J. June 19, 2009)

(*citing D.R. Horton Inc. - New Jersey v. Dynastar Dev., L.L.C.*, 2005 WL 1939778, at *20 (N.J. Super. Ct. Law Div. Aug. 10, 2005).

In this case, Defendant was incorporated in British Columbia and therefore, it argues that British Columbia law applies. Plaintiff does not dispute this contention. As noted above, in the APA, the choice of law provision states that it governs "[t]his Agreement," *see* APA § 1.13, but the provision does not apply to alter ego liability or a veil piercing analysis.. *Las Vegas Sands*, 713 F. Supp. 2d at 443. Nonetheless, because both the state of formation and choice of law provision dictate that British Columbia law governs this dispute, the Court will apply British Columbia law.

It is paradigmatic in corporate law that a corporation is a legal entity distinct from its shareholders or affiliated corporations. *B.G. Preeco (Pacific Coast) Ltd. v. Bon Street Holdings Ltd.* (1989), 37 B.C.L.R. 2d 258, paras. 37, 38 (Can. B.C. Ct. App.).[2] The corporate veil should not be lifted whenever a judge thinks it unfair not to do so. *Id.* para. 37. Rather, a court should pierce the corporate veil where the company fails to respect the corporate formalities of the separate companies. *Id.* para. 41, 48. Furthermore, a parent company can be liable for the contractual liability of the subsidiary where "conduct akin to fraud" has occurred or where the subsidiary is "completely dominated and controlled and being used as a shield for fraudulent or improper conduct." *DNM Systems Ltd. v. Lock-Block Canada Ltd.*, 2015 B.C.S.C. 2014, para. 95; *1st Shot Fire Protection v. Paragon Mechanical*, 2016 B.C.P.C. 292 (CanLII), citing *Transamerica Life Ins. Co. of Canada v.*

---

[2] The British Columbia Court of Appeal is the highest court in the province. http://www.courts.gov.bc.ca/Court_of_Appeal/.

*Canada Life Assurance Co.* (1006), 1996 CanLII 7979 (on SC) at 433–34 (Gen. Div., aff'd [1997] O.J. No. 3754 (C.A. Ont.).

In this case, Plaintiff alleges, and Defendant does not dispute, that Defendant's Vice President and Chief Financial Officer signed the contract on Softcare's behalf. (Compl. at 4, ECF No. 1). Furthermore, contrary to Defendant's contention, the plain language of the contract states that Defendant had the capacity to terminate Softcare and Defendant's own employees in connection with the contract transfer, so that Plaintiff could immediately rehire the employees upon purchase. APA § 7.5, ECF No. 1, Ex. B. Defendant's only argument against these representations is that Softcare's name, not Defendant's, is on the contract. (*See* Def.'s Br. at 3, ECF No. 4-1, *citing* APA at 1, ECF No. 1, Ex. B). Inherent in a veil piercing analysis is that the court looks past the mere name or title of a company to the actions of the parties and whether corporate formalities have been respected. *B.G. Preeco*, 37 B.C.L.R. 2d 258, paras. 41–48. In this case, Plaintiff has alleged that Defendant failed to respect corporate formalities between itself and Softcare by signing the APA on Softcare's behalf, and asserting its right to terminate Softcare's employees as well as its own. Accepting as true Plaintiff's well-pleaded factual allegations, Plaintiff has plausibly alleged that Defendant failed to respect corporate formalities between it and Softcare. Therefore, piercing the corporate veil is appropriate for the purposes of this motion — Defendant and Softcare are treated as common entities and Defendant may be held liable to Plaintiff based on the APA.[3]

---

[3] As this is a motion to dismiss stage, the Court makes no affirmative findings and Defendant may raise this issue at a future date if facts are discovered that show it is not proper to pierce the corporate veil.

Although I found that Plaintiff has sufficiently alleged facts to pierce the corporate veil on this motion, such that Defendant can be held liable for the acts of Softcare, I decline to address the remainder of Defendant's arguments with regard to the dismissal of Plaintiff's substantive claims. This determination is based on the parties' lack of briefing and analyses as to the probative issue of which law governs Plaintiff's claims. In their briefs, the parties simply apply New Jersey law to Plaintiff's claims. However, the purchase agreement between Plaintiff and Softcare, as noted above, included a choice of law provision which provides that British Columbia law applies to the contract. To the extent Plaintiff's causes of action against Defendant are contract-based claims, the parties have not adequately addressed why the choice of law provision does not control here, particularly since the parties have not contested the validity of that provision. To the extent that the claims against Defendant are extraneous to the agreement, the parties have not briefed which forum's law applies. In other words, the parties have not engaged in a choice of law analysis based on New Jersey's rules. *See Berg Chilling Systems, Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006) (finding that courts must apply New Jersey choice of law rules when determining which substantive law governs the plaintiff's claims).[4] Indeed, there are three different competing forums in this case — New Jersey, Nevada and British

---

[4] At step 1, the court assesses whether an "actual conflict" between the laws of the potentially interested states pertaining to the dispute at hand exists. *Id.* (citation omitted). If a conflict between the potentially applicable laws does not exist, the court is presented with a false conflict, and the choice of law "inquiry is over." *Lebegern v. Forman*, 471 F.3d 424, 428 (3d Cir. 2006). On the other hand, if there is an actual conflict between the states' laws, the Court moves on to the second step of its analysis. At step 2, the court must determine "which state has the most meaningful connections with and interests in the transaction and the parties." *NL Industries, Inc. v. Commercial Union Ins. Co.*, 65 F.3d 314, 319 (3d Cir. 1995) (citing *State Farm Mut. Auto. Ins. Co. v. Estate of Simmons*, 84 N.J. 28 (1980)).

Columbia.  Without a proper analysis by the parties, I cannot simply assume that New Jersey law applies to Plaintiff's claims, as apparently the parties do.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is **DENIED** without prejudice.  Defendant may renew its motion to dismiss consistent with the dictates of this Opinion.

Date:   July 18, 2017                                                                    /s/            Freda L. Wolfson
                                                                                         FREDA L. WOLFSON, U.S.D.J.